**Dennis E. GAUL, Plaintiff,**

v.

**AT & T, INC., AT & T Bell Laboratories, Inc., AT & T Consumer Products, Inc., John Does 1–100; ABC Corp., XYZ Corp., Defendants.**

Civil No. 94–5263 (CSF).

United States District Court,
D. New Jersey.

Feb. 21, 1997.

Law Offices of Linda B. Kenney by Linda B. Kenney, Gregory S. Schaer, Red Bank, NJ, for Plaintiff.

Carpenter, Bennett & Morrissey by Francis X. Dee, David J. Reilly, Christopher J. Dalton, Newark, NJ, for Defendant AT & T Corp.

## OPINION

CLARKSON S. FISHER, District Judge.

·The present case is an action for failure to accommodate plaintiff's disability, in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5–1 et seq. ("NJLAD"), and the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"). Plaintiff also asserts claims for breach of contract and breach of implied covenant of good faith and fair dealing. The matter is now before the court on defendants' motion for summary judgment dismissing plaintiff's complaint in its entirety. For the following reasons, defendants' motion is granted.

Dennis Gaul ("Gaul" or "Plaintiff") commenced employment with defendant, AT & T Corp. ("AT & T" or "Defendant"), in 1981 as a Technical Associate, and was later promoted to Senior Technical Associate. Gaul had been diagnosed as early as 1984 with depression-related illness, and has since been diagnosed over years with stress disorders and major depression. In 1986, Gaul suffered a nervous breakdown for which he was hospitalized, and which caused him to be absent from work for three months of the year. Gaul returned to work, and in 1988 received a two-step promotion to Member of Technical staff. However, in June of 1990, Gaul suffered another severe depression episode after he received an unfavorable performance review from his then-manager and was warned that his job was "in jeopardy." The

relapse caused him to go out on a stress leave on June 28, 1990, after being diagnosed by the director of AT & T's Medical Department as suffering from depressive disorder.

While out on disability leave, Gaul was contacted by Tang Jampathon, a supervisor from the Cordless Telephone Department. Jampathon was interested in having Gaul work on a project for which Gaul's skills were required. Gaul explained to Jampathon that he would be unable to handle a stressful work environment. Jampathon assured him that the people in the department were very supportive, and that "things [were] going to be okay." Jampathon Dep. at 33:5–12. While on disability leave, Gaul began seeing a psychiatrist, Dr. Morris Reby, who authorized Gaul's return to work on a "limited basis" on September 4, 1990. Gaul asserts that when he returned to work, he repeatedly explained Dr. Reby's instructions that measures needed to be taken to attempt to curtail and respond to any workplace-related stress or conflicts that would be likely to aggravate his depression again.

Gaul performed successfully upon returning to work. However, in December 1991, he was assigned to work with Donovan Folkes on the "International Project," also known as the "Herring Project." Almost from the outset, Gaul and Folkes had difficulty working together, resulting in a constant source of stress for Gaul. Gaul claims that Folkes began using information from Gaul's database and not sharing information with him, and that Folkes took credit for Gaul's ideas. Over the next nine months, Gaul contacted various people at AT & T concerning his difficulty in his new position with Folkes. He first attempted to resolve the problems with Folkes himself, but when these attempts were unsuccessful, he made Jampathon aware of his difficulties in February 1992. Gaul then also attempted to obtain help from Paul Newland, who served as team leader on the Herring Project. Gaul later spoke with Patricia Kaufman, an Ombudsperson at AT & T. Neither Newland nor Kaufman assisted Gaul with his difficulty.

Beginning in May 1992, Edwin Muth replaced Jampathon, who had transferred to Singapore. Gaul asserts that he spoke with Muth about his problems in working with Folkes on numerous occasions between May and September. Gaul claims he specifically asked Muth to remove him from the project and to place him on a less stressful assignment. Between March and August, Gaul also met with Steven Bourne, the Department Head, on at least six occasions and requested that action be taken. The parties dispute whether Gaul expressly requested a transfer before August 1992. At that time, Gaul contacted Bourne and advised him that things were getting worse, and that he wouldn't be able to work under those conditions much longer. He told Bourne that he was going to have a nervous breakdown if he did not receive help. At that meeting, Gaul explicitly asked to be transferred off the project. Bourne did not give him an answer regarding the transfer at that time, although Muth asserts that he and Bourne had decided after the August meeting that Gaul would be reassigned. Gaul was not notified of any decision, however, and did not follow up on the request. Approximately two weeks after the meeting, on September 11, 1992, Gaul again went out on disability leave and has not returned to work. Gaul began collecting disability payments from AT & T's disability insurance plan and later collected benefits from the Social Security Administration, which determined that he became totally disabled on September 14, 1992.

On September 9, 1994, Gaul filed a complaint against AT & T, alleging four causes of action. In the first count, Gaul alleges that he was handicapped within the meaning of the NJLAD, and that AT & T violated the NJLAD by failing to accommodate his alleged handicap. In the second count, Gaul alleges that AT & T violated public policy as embodied in the ADA by failing to accommodate his disability. In the third and fourth counts, respectively, Gaul alleges that AT & T breached a contract with him and breached an implied covenant of good faith and fair dealing. Discovery has been taken, and AT & T now moves for summary judgment in its favor, dismissing plaintiff's complaint.

The entry of summary judgment is appropriate only if the "pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of making a prima facie showing that he is entitled to summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In order to prevail, the movant must "produce credible evidence that would entitle it to a directed verdict if not controverted at trial." *Tigg Corp. v. Dow Corning Corp.,* 822 F.2d 358, 362 (3d Cir.1987). This may be done by identifying those portions of the pleadings and evidentiary submissions believed to demonstrate the absence of any genuine issue of material fact. *Id.* The movant need not, however, support its motion with materials *negating* the opponent's claim. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552 (emphasis in original).

Upon such affirmative showing, the burden shifts to the nonmoving party to come forward with affidavits or other competent proof which sets forth specific facts showing that there is indeed a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. at 1356. A disputed fact is " 'material' if it would affect the outcome of the suit as determined by the substantive law." *Gray v. York Newspapers, Inc.,* 957 F.2d 1070, 1078 (3d Cir.1992) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. All evidence submitted must be viewed in a light most favorable to the party opposing the motion. *Gray,* 957 F.2d at 1078.

■ As a threshold matter, the defendant argues that Gaul has not demonstrated that he is handicapped or disabled within the meaning of the NJLAD or ADA, and therefore does not fall within the protection of those statutes. Taking all inferences in favor of the nonmoving party, this court initially concludes that plaintiff has satisfied his burden of demonstrating that there is at least a genuine issue of material fact as to whether he suffers from depression and anxiety disorders. Gaul has been diagnosed with depression-related illness and stress disorders for over ten years, including a diagnosis of depressive disorder by the director of AT & T's Medical Department. The defendant argues that Gaul cannot establish the fact of his alleged disability because New Jersey law requires expert testimony to prove that the employee is handicapped. The defendant cites *Clowes v. Terminix International, Inc.,* 109 N.J. 575, 597, 538 A.2d 794 (1988), in which the New Jersey Supreme Court held that "expert medical testimony is required to establish the fact of the employee's [handicap]." AT & T states that because the plaintiff never identified any expert witnesses to the court or to the defendant, Gaul may not now put forth testimony to prove he was disabled.

■ The court finds that Gaul has satisfied the requirement in *Clowes* with the testimony of treating physicians who have been previously identified. *Clowes* simply required that a plaintiff put forth competent medical evidence that he actually suffered from the ailment he claims is his disability. In that case, the plaintiff claimed he was disabled because he was an alcoholic, but he produced no evidence that he in fact suffered from alcoholism. This court does not find that the *Clowes* court intended to institute any formal requirement of "expert" testimony. It is well settled that treating physicians may testify as to any subject relevant to the evaluation and treatment of their patients. *Stigliano v. Connaught Labs,* 140 N.J. 305, 314, 658 A.2d 715 (1995); *Ginsberg v. St. Michael's Hospital,* 292 N.J.Super. 21, 678 A.2d 271 (App.Div.1996). For the purposes of this motion, the testimony and documentary evidence by plaintiff's treating physicians, including that by defendant's own physicians, will be deemed sufficient to establish that Gaul does in fact suffer from stress and depressive disorders.

The next, and more fundamental question, however, is whether a plaintiff who suffers from depression and stress disorders qualifies as disabled or handicapped under the ADA or NJLAD. The ADA provides that the term "disability" means, with respect to an individual:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). An individual need only satisfy one of these parts to be considered an individual with a disability under the ADA.

It is important to note that the issue in this case is not the general question ˙ of whether depression and anxiety disorders are considered disabilities under the ADA. There is sufficient case law to establish that such mental disorders may indeed fall within the scope of the Act. See, e.g., Pritchard v. Southern Co. Services, 92 F.3d 1130, 1132 (11th Cir.1996), amended on reh'g, 102 F.3d 1118 (11th Cir.1996); Shea v. Tisch, 870 F.2d 786 (1st Cir.1989); Doe v. Region 13 Mental Health—Mental Retardation Commission, 704 F.2d 1402, 1408 (5th Cir.1983), reh'g denied, 709 F.2d 712 (5th Cir.1983). Moreover, the administrative regulations concerning the ADA define "mental impairment" as "any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(2). Depressive disorders would presumably fall under the category of emotional illness.

■ The specific issue in each case, however, is whether the plaintiff's particular disorder impairs his life in a manner which renders him disabled or handicapped under the acts. This plaintiff-specific analysis is required by the ADA administrative regulations, which explain that the disability determination does not depend as much on the name or diagnosis of the impairment as it does on the effect of the impairment on a particular individual. 29 C.F.R. Pt. 1630 App. § 1630.2(j); see also Chandler v. City of Dallas, 2 F.3d 1385 (5th Cir.1993) ("The question of whether an impairment constitutes a substantial limitation to a major life activity is best suited to a case-by-case determination."), cert. denied, 511 U.S. 1011, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994); Forrisi v. Bowen, 794 F.2d 931, 933 (4th Cir.1986) ("The inquiry is, of necessity, an individualized one—whether the particular impairment constitutes for the particular person a significant barrier to employment."); Dotson v. Electro–Wire Products, Inc., 890 F.Supp. 982, 987 (D.Kan.1995).

There is a paucity of case law on mental disabilities in this circuit. Therefore, in analyzing whether Gaul's particular impairment constitutes a disability for the purposes of the ADA, this court is advised by the Equal Employment Opportunity Commission guidelines for interpreting the ADA, codified at 29 C.F.R. Pt. 1630 et seq. The court will also look to the treatment of mental disability issues by other jurisdictions. Gaul suffers from depression and anxiety disorders which render him unable to cope with stress or work in an unduly stressful environment. The issue is whether this mental impairment substantially limits one or more of his major life activities. 42 U.S.C. § 12102(2)(A). If his impairment does not substantially limit these activities, the plaintiff is not a disabled person within the meaning of the ADA. Clark v. Virginia Bd. of Bar Examiners, 861 F.Supp. 512, 517 (E.D.Va.1994).

The term "substantially limits" means

(I) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). The regulations define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, learning, and working." 29 C.F.R. § 1630.2(i). Gaul claims to be limited in his

working ability. When the activity impaired is working, the term "substantially limits" means

> significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i).

Plaintiff apparently believes his impairment significantly restricts his ability to perform jobs which are unduly stressful. However, such a classification is not adequate to render the plaintiff substantially limited in the major life activity of working. The regulations advise that the definition above refers to "general employment demographics and/or recognized occupational classifications that indicate the approximate number of jobs from which an individual would be excluded because of an impairment." 29 C.F.R. Pt. 1630 App. § 1630.2(j). The examples provided in the regulations refer to classes of jobs such as manual labor or office work. Clearly, "unduly stressful" jobs do not constitute a recognized occupational classification. Therefore, the plaintiff is not substantially limited in the major life activity of working. He is not significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. An employee who fails to establish such inability is not disabled under the Act. *Farley v. Gibson Container, Inc.*, 891 F.Supp. 322 (N.D.Miss. 1995); *Dotson v. Electro–Wire Products, Inc.*, 890 F.Supp. 982 (D.Kan.1995). Accordingly, although he suffers from depression and anxiety disorders, Gaul is not disabled within the meaning of the ADA.

■ Plaintiff argues that, even if he is not found to be actually disabled, he should be considered disabled under the ADA because he had a record of such impairment and was regarded as having such an impairment. 42 U.S.C. § 12102(2)(B) & (C). These parts of the definition of disability are satisfied "if the record relied on by an employer indicates that the individual has or has had a substantially limiting impairment. The impairment indicated in the record must be an impairment that would substantially limit one or more of the individual's major life activities." 29 C.F.R. Pt. 1630 App. § 1630.2(k). As discussed above, Gaul's illnesses, while serious, do not constitute such limiting impairments. While Gaul had a record of suffering from depression and anxiety disorders, and may have been regarded as suffering from those illnesses, plaintiff has put forth no evidence which would suggest that he was viewed as suffering from an impairment which substantially limited him in the major life activity of working, nor was there a record of such limitations. In fact, Gaul's employment history with AT & T seems to indicate the contrary, for he was called back from disability leave to work on a special project. Apparently, his supervisors did not regard him as having a substantially limiting impairment. Accordingly, Gaul is not disabled within the meaning of parts B and C of the ADA definition of disability.

■ The definition of "handicap" under the NJLAD differs from the ADA's definition of "disability." In pertinent part, the NJLAD defines "handicapped" as one who is

> suffering from physical disability, infirmity, malformation or disfigurement ... or from any mental, psychological, or developmental disability resulting from anatomical, psychological, physiological or neurological conditions which prevents the normal exercise of any bodily or mental functions or is demonstrable, medically or psychologically, by accepted clinical or laboratory diagnostic techniques.

N.J.S.A. 10:5–5(q). This definition of "handicapped" is very broad in its scope, for the NJLAD does not define the specific conditions that fall within its sweep. *Clowes v. Terminix Intern., Inc.*, 109 N.J. 575, 593, 538 A.2d 794 (1988). Rather, the New Jersey Supreme Court has stated that the NJLAD is remedial social legislation deserving of a liberal construction. *Id.* at 590, 538 A.2d 794.

■ The New Jersey state courts have not yet addressed the issue of whether depression and stress disorders are handicaps with-

in the meaning of the NJLAD, although this court has suggested that stress and depression do not constitute handicaps cognizable under the NJLAD. *Alm v. Marriott Corporation,* 1991 WL 313897 (D.N.J.1991). The court is not guided by its analysis of Gaul's ADA claim, because the NJLAD has no "major life activities handicap" requirement. *Illingworth v. Nestle U.S.A., Inc.,* 926 F.Supp. 482, 488 (D.N.J.1996) (citing *Gimello v. Agency Rent–A–Car Systems, Inc.,* 250 N.J.Super. 338, 358, 594 A.2d 264 (App.Div. 1991)). Without clear guidance from the state courts or analogous federal law, this court is reluctant to decide whether depression and stress disorders fall within the NJLAD's definition of "handicap." The court need not make such a determination in the present case, however, for as discussed below, the plaintiff's claim must fail because his requested accommodation was not reasonable.

The ADA explicitly provides that the term "discriminate" includes

> not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.

42 U.S.C. § 12112(b)(5)(A). The term "reasonable accommodation" may include

> job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9)(B). While the statutory language of the NJLAD does not explicitly address reasonable accommodation, New Jersey courts have interpreted the law to require an employer to accommodate an employee's handicap. *See Ensslin v. Township of North Bergen,* 275 N.J.Super. 352, 364, 646 A.2d 452 (App.Div.1994), *certif. denied,* 142 N.J. 446, 663 A.2d 1354 (1995); *Matter of*

*Cahill,* 245 N.J.Super. 397, 585 A.2d 977 (App.Div.1991). Courts may look to federal law in analyzing the reasonable accommodation requirement of the NJLAD. Given the "dearth of New Jersey law on the issue of the employer's obligation to accommodate the physical handicap of an employee ... it is appropriate to refer to case law interpreting federal law on the same point. Indeed, our Supreme Court has suggested a correlation between State and federal law on handicap discrimination." *Ensslin* at 364, 646 A.2d 452 (citing *Andersen v. Exxon Co., U.S.A.,* 89 N.J. 483, 497 n. 3, 446 A.2d 486 (1982)).

From Gaul's description of his alleged disability, and from his history of disability leaves from AT & T, it appears that reasonable accommodation of his depression and stress disorders would involve placing him in a position of low stress and attempting to avoid any conflicts or other situations which might trigger or exacerbate his symptoms. Gaul's situation is very similar to that of the psychologically impaired plaintiff in *Pesterfield v. Tennessee Valley Authority,* 941 F.2d 437 (6th Cir.1991). In that case, the court found that it would be unreasonable to require the defendant to "place plaintiff in a virtually stress-free environment and immunize him from any criticism in order to accommodate his disability." *Id.* at 442. This court agrees with that determination, and finds it applicable to the present case.

In opposition to the motion for summary judgment, Gaul contends that the above analysis should not govern his case. He argues that he never requested a "stress-free work environment" as an accommodation, but rather asked to be transferred away from a workplace conflict that was a source of stress into an available position. This contention only serves to undermine his claim that he is disabled, however, and suggests instead that he was merely unable to work with Folkes. Courts have held that depression, stress, or other mental and physical maladies caused by job-related pressures or workplace frictions are not disabilities under federal and analogous state legislation. *See Hatfield v. Quantum Chemical Corp.,* 920 F.Supp. 108 (S.D.Tx.1996) (employee's inability to work under a particular supervisor was not a sub-

stantial limitation on working, and thus employee was not disabled under the ADA); *DiGloria v. AT & T,* 1993 WL 735034 (M.D.Fla.1993) (the gravamen of plaintiff's claim was that she was unable to work under the supervision of particular individuals, and therefore she was not deemed "handicapped").

In summary, if Gaul claims he merely needed to transfer away from Folkes to accommodate his disorders, then he is not disabled under the ADA or handicapped under the NJLAD. If he is disabled due to his depression and stress disorders, then the mere transfer would be unlikely to accommodate his handicap. The court notes that Gaul's distress over a negative performance review required him to take a three-month disability leave in 1990. It seems, therefore, that in order to accommodate Gaul, his employer would have to insure that he would be guarded against stress and criticism. Such accommodation is not reasonable, and would impose an undue hardship on the employer. Accordingly, Gaul cannot prevail on his ADA and NJLAD claims for failure to accommodate his disability. Summary judgment is appropriate on the issues of disability and accommodation because the requisite determinations are legal, rather than factual. Therefore, AT & T's motion for summary judgment is granted on the issues of disability and accommodation, and Gaul's ADA and NJLAD claims are dismissed.

■ In addition to his statutory claims, Gaul asserts claims for breach of contract and breach of the implied covenant of good faith and fair dealing. In the third count of his complaint, Gaul alleges that AT & T's failure to accommodate his disability led to his constructive discharge, and therefore that AT & T breached its employment contract with him. AT & T contends that Gaul did not have an employment contract with the defendant, because he was an at-will employee. Gaul counters that AT & T's employment manual constituted a contract, and that the manual explained the company's policy regarding employees' disabilities. The policy requires that reasonable accommodations be made for the physical and mental disabilities of otherwise qualified employees and applicants whenever a need is identified. Whether an employment manual constitutes an employment contract is a question of fact for the jury. *Witkowski v. Thomas J. Lipton, Inc.,* 136 N.J. 385, 643 A.2d 546 (1994). Taking all inferences in favor of the non-moving party, however, this court finds that even if an employment contract existed, AT & T did not breach it and did not constructively discharge the plaintiff.

■ AT & T did not breach any promise or contract to accommodate an employee's disability in this case because, even if Gaul were deemed disabled, his request for accommodation was not reasonable. Similarly, AT & T did not constructively discharge Gaul. To prevail on a claim for constructive discharge in the discrimination context, a plaintiff must show "that the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Muench v. Township of Haddon,* 255 N.J.Super. 288, 302, 605 A.2d 242 (App.Div.1992) (citation omitted). At the outset, this court notes that Gaul did not resign from AT & T. Rather, he went out on disability leave and subsequently applied for and received long-term disability benefits. His employment with AT & T terminated upon the expiration of his period of short-term disability, in about September 1993. Substantively, Gaul cannot prove that AT & T permitted intolerable conditions of discrimination in employment. As discussed above, Gaul's requested accommodation was not reasonable, and therefore, even if he were considered disabled, AT & T's failure to accommodate him did not constitute discrimination. Accordingly, summary judgment is granted on this issue, and plaintiff's claim for breach of contract due to constructive discharge is dismissed.

■ Finally, Gaul claims that AT & T breached the implied covenant of good faith and fair dealing. In opposition to the motion for summary judgment, plaintiff has put forth no evidence of bad faith on the part of AT & T, but has merely asserted that a jury could find such improper motives. Such bare allegations are insufficient to defeat a motion for summary judgment. *Matsushita* at 587, 106 S.Ct. at 1356 (the nonmoving party must

come forward with affidavits or other competent proof which sets forth specific facts showing that there is indeed a genuine issue of material fact for trial). Consequently, defendant's motion is granted, and Gaul's claim for breach of the implied covenant of good faith and fair dealing is dismissed.

For the foregoing reasons, AT & T's motion for summary judgment is granted on all counts, and Gaul's complaint is dismissed in its entirety.