Paula TARDIE, Plaintiff,

v.

**REHABILITATION HOSPITAL OF RHODE ISLAND, and Braintree Hospital Rehabilitation Network, Defendants.**

No. CIV.A 96–681L.

United States District Court, D. Rhode Island.

May 28, 1998.

126

Peter J. Cerilli, Providence, RI, for Plaintiff.

James M. Paulson, Joseph P. McConnell, Jaclyn L. Kugell, Morgan, Brown & Joy, Boston, MA, John H. Blish, Blish & Cavanagh, Providence, RI, for Defendants.

## OPINION AND ORDER

LAGUEUX, Chief Judge.

This matter is before the Court on defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. At issue is whether or not the Rehabilitation Hospital of Rhode Island ("RHRI") and the Braintree Hospital Rehabilitation Network ("BHRN")(together referred to as "defendants") discriminated against plaintiff, Paula Tardie ("plaintiff" or "Tardie"), based on her medical disability. in violation of various federal statutes.

In her complaint, plaintiff alleges that defendants, her employers, discriminated against her because of a medical disability. Specifically, she alleges in Count I that defendants violated § 504 of the Rehabilitation Act, 29 U.S.C. § 794, (the "Rehabilitation Act" or the "Act"). In Count II, plaintiff claims a violation of the Americans with Disabilities Act (hereafter "ADA"), 42 U.S.C. §§ 12101–12213 (1990). In Count III she alleges that the actions of defendants violated the Family and Medical Leave Act of 1993 (the "FMLA"). Count IV alleges violations of the corresponding state law statutes: the Rhode Island Discrimination Against Handicap Act, R.I. Gen. Laws, § 42–87–1, et seq., the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws, § 28–5–1, et seq., and the Rhode Island Parental and Family Medical Leave Act, R.I. Gen. Laws, § 28–48–1, et seq. Defendants have moved for summary judgment on all counts.

## I. Background

In considering this motion, the Court must view the evidence in the light most favorable to the nonmoving party, here plaintiff. Viewed in that manner, the facts in this case are as follows:

Plaintiff began working as a personnel assistant in the Human Resources Department at BHRN in January of 1990. In July of that year, Richard Horne ("Horne") became plaintiff's new supervisor, mentor and friend. In 1992 or 1993, plaintiff was promoted to the position of Administrator of Planning and Projects in BHRN's Human Resources Department. This job required Tardie to work more independently than she had in her previous position, becoming move involved in committee participation and working on BHRN's personnel policies and procedures.

In 1993, BHRN and Landmark Medical Center entered a joint venture to establish RHRI. BHRN is the managing partner overseeing the operations of RHRI. In about September 1993, Horne sent Tardie to establish the Human Resources Department at RHRI. Tardie was instructed to create personnel files, employee policies and procedures, and employee handbooks, hire staff, draft job descriptions and hold and attend various employee and committee meetings. In January, 1994, plaintiff became the Director of Human Resources at RHRI and earned approximately $50,000.00 per year. Horne had recommended Tardie for the position but recognized that she had never run a department independently before. As Director, plaintiff was responsible for all the duties she had previously in the set up of the department, was a member of the committee negotiating the collective bargaining agreement with RHRI's union, and also was required to attend union grievance meetings.

RHRI is staffed with personnel twenty four hours a day, seven days a week. As the

Director of Human Resources, Tardie was frequently required to be present for at least a portion of all three shifts. She often returned to work from her home to handle employee issues beyond normal business hours. Tardie acknowledged that this was part of her job which required her to be available twenty four hours a day, seven days a week. On average she had to work fifty to seventy hours per week. The job description for Human Resources Director which plaintiff herself drafted, required the ability to "maintain assigned work hours and have sufficient endurance to perform tasks over long periods of time."

On or about July 19, 1994, Tardie was examined by her physician after she experienced chest pains, numbness in the arms and dizziness. The doctor believed she might have an enlarged heart valve and proscribed testing that would require plaintiff to stay out of work for approximately two weeks. Tardie's husband informed Donna Boisel, personnel assistant at RHRI, that plaintiff would be unable to work for a time. A few days later, Tardie was contacted by Horne who indicated concern for her health. When plaintiff indicated some job related concerns, Horne told her to "just get better." He also explained that he thought it would be better to return Tardie to her former position at BHRN, but that the decision was hers. Tardie then resigned from her position at RHRI and sent Horne a card stating that she was "really sorry (she) couldn't do it, but (she) gave it (her) best." Horne understood, however, that plaintiff wanted to return to either hospital in some capacity. Approximately one week later, plaintiff spoke with the CEO of RHRI, Donald Burman ("Burman") and explained her situation. Burman requested that she keep him informed of the status of her condition and that she submit a doctor's note supporting her need for a leave of absence.

As Director of Human Resources, Tardie was familiar with RHRI's leave of absence policy and was aware that she needed to notify her supervisor and provide medical documentation supporting the request. A request for a leave of absence must be in writing and failure to provide medical docu-

mentation is grounds for denying a leave request. Tardie did not submit her request for leave in writing nor did she attempt to obtain a doctor's note until her scheduled appointment on August 11, 1994. The note she produced stated she needed to remain out of work from July 26, 1994 through September 6, 1994.

Horne subsequently contacted Tardie to discuss the status of her employment and which positions were available to her. On or about August 16, 1994, Tardie and Horne had a meeting where Horne explained that there were no positions available at RHRI but that he would create a part time position at BHRN for her if she was interested. Horne also said that if she was not interested in that position, he would assist her in obtaining a severance package from RHRI and finding employment with another company. Plaintiff said she needed to think over her options.

The next day, Tardie contacted Burman and told him that she intended to return to her former position as Director of Human Resources at RHRI. She stated that when she returned she would gradually increase her hours to forty per week but could no longer work additional hours. Tardie then contacted Horne and explained that she wanted to return to the position of Director of Human Resources at RHRI. Horne, Burman and Lisa LaDew, Chief Operating Officer at RHRI, met to discuss whether plaintiff could perform the duties of Director while only working forty hours per week. All agreed that it could not be done and Horne was instructed to inform Tardie of this. Horne then contacted plaintiff and told her that she could not return to RHRI as Director of Human Resources.

Tardie then went on a planned vacation and returned at the end of August, 1994. When she returned, she spoke with Burman who told her that she could not fully perform the Director's job at RHRI in a forty hour workweek and that they would be preparing a severance package for her. On or about September 6, 1994, Tardie met with her doctor who determined that her condition was directly caused by employment related stress and that while she could return to work on a full-time basis, she should avoid stress-pro-

ducing situations, including working sixty to seventy hours per week. Horne contacted plaintiff that evening and told her that three months severance would be offered to her. Tardie replied that was "fine" with her. On September 9, 1994, plaintiff received a letter from Burman confirming the ninety day severance package. Plaintiff later filed a charge of handicap discrimination with the Rhode Island Human Rights Commission on December 1, 1994.

Defendants have now moved for summary judgment on all Counts. After hearing oral arguments on the motion for summary judgment, the Court took the matter under advisement. The case is now in order for decision.

## II. Standard for Decision

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on summary judgment motions:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Therefore, the critical inquiry is whether a genuine issue of material fact exists. "Material facts are those 'that might affect the outcome of the suit under the governing law.'" *Morrissey v. Boston Five Cents Savings Bank,* 54 F.3d 27, 31 (1st Cir.1995)(quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "A dispute as to a material fact is genuine 'if the evidence is such that a reasonable jury could.'" *Id.*

On a motion for summary judgment, the Court must view all evidence and related inferences in the light most favorable to the nonmoving party. *Continental Casualty Co. v. Canadian Universal Ins. Co.,* 924 F.2d 370, 373 (1st Cir.1991). At the summary judgment stage, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood." *Greenburg v. Puerto Rico Maritime Shipping Auth.,* 835 F.2d 932, 936 (1st Cir.1987). Similarly, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem most plausible, or because the opponent is unlikely to prevail at trial." *Gannon v. Narragansett Elec. Co.,* 777 F.Supp. 167, 169 (D.R.I.1991).

## III. Discussion

### a. The Rehabilitation Act

The Rehabilitation Act itself states, in relevant part, that "no otherwise qualified individual ...shall, solely by reason of his or her disability... be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).[1] The governing regulations define an "individual with a disability" as one who "(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such impairment; or (iii) is regarded as having such an impairment." 29 C.F.R. § 1614.203. *Leary v. Dalton* 58 F.3d 748, 752 (1st Cir.1995). Plaintiff here alleges that she has such a physical or mental impairment and also that she was regarded by RHRI as having such an impairment. Her claim fails regardless of which definition of disability she pursues.

---

1. Plaintiff has alleged that the defendant hospitals are recipients of government contracts, but this in and of itself does not establish federal assistance:

'An entity receives financial assistance when it receives a subsidy.' *DeVargas v. Mason & Hanger–Silas Mason Co., Inc.,* 911 F.2d 1377, 1382 (1990), *cert. denied* 498 U.S. 1074, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991). If the government intends only to compensate defen-

dant for goods and services received, then there is no subsidy, even if the compensation exceeds fair market value.

*Mass. v. Martin Marietta Corp.,* 805 F.Supp. 1530, 1542 (D.Co.1992), Here there has been no definitive showing made that either RHRI or BHRN is a recipient of federal assistance but that matter need not be further investigated at this time as summary judgment will be granted on separate and distinct grounds.

Plaintiff argues that she has a physical impairment which substantially limits one or more of her major life activities. Her doctor has said that she cannot work more than forty hours per week without suffering adverse consequences. While the applicable regulations indicate that working is a major life activity, 29 C.F.R. § 1613.702(c), they also indicate, however, that the "inability to perform a single, particular job does not constitute a substantial limitation on the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i). Therefore, a person who is "unsuitable for a particular position has not thereby demonstrated an impairment substantially limiting such person's major life activity of working." *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 724 (2nd Cir.1994), *cert. denied* 513 U.S. 1147, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995).

Plaintiff herself has indicated that the Director of Human Resources job is very demanding, requiring one to work between fifty and seventy hours a week. When asked if there were times when she was required to deal with matters beyond the hours of 9am – 5 pm, she said it happened quite frequently since it was part of the job. She also acknowledged that the position often required her to return to work after she had gone home for the evening and that she frequently needed to be present at the hospital for at least a portion of all three eight hour shifts. Additionally, plaintiff herself drafted the job description for the Director's position which states that the Director must have "the ability to maintain assigned work hours and have sufficient endurance to perform tasks over long periods of time."

Plaintiff claims her medical condition makes it impossible for her to work more than forty hours a week. There are vast employment opportunities available which only require forty hour work weeks. Plaintiff has sought and been offered a number of such opportunities since her termination from RHRI and her medical condition does not preclude her from any of those positions. As "an impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one," *McKay v. Toyota Mfg., U.S.A., Inc.*, 110 F.3d

369, 373 (6th Cir.1997), rehearing denied (1997), quoting *Wooten v. Farmland Foods*, 58 F.3d 382, 386 (8th Cir.1995), plaintiff has not shown that she suffers from an impairment that restricts her ability to perform a major life activity. She is not restricted from working in general, she is only restricted from working over forty hours a week. Therefore, plaintiff's contention that she suffers from an impairment which constitutes a disability under the statute is without merit.

Plaintiff also argues that she was disabled in the sense that the administrators at RHRI viewed her as having a heart condition and, thus, discriminated against her in violation of Section 504. This approach is also deficient in establishing a disability under Section 504 of the Rehabilitation Act. In *Welsh v. City of Tulsa, Okl.*, 977 F.2d 1415 (10th Cir.1992), the Court stated the following when addressing the issue of whether an employer regards an employee as disabled:

> While the regulations define a major life activity to include working, this does not necessarily mean working at the job of one's choice. Several courts that have addressed the issue have decided that "an employer does not necessarily regard an employee as handicapped simply by finding the employee to be incapable of satisfying the singular demands of a particular job."

*Id.* at 1417–1418 (citations omitted).

Tardie claims the administrators incorrectly understood her to have a heart condition and made the decision not to rehire her based upon that belief. Regardless of what they believed, the statute defines a disability as "(i) having a physical or mental impairment which substantially limits one or more of such person's major life activities; ... or (iii) is regarded as having *such an impairment*." 29 C.F.R. § 1614.203(a)(1) (emphasis added). Even if the administrators were mistaken as to the nature of the impairment, they understood that as a result, although plaintiff was not capable of working more than forty hours per week, she could work at least forty hours per week. The job she sought required more than forty hours a week of work. The administrators met and determined as a group that the Director's job

could not be satisfactorily performed in forty hours during a week. As discussed above, the inability to work more than forty hours a week is not a major life activity. Therefore, the administrators could not have regarded plaintiff as having "such an impairment" that limited a major life activity of plaintiff. Based on information she provided, they correctly regarded her as having an impairment which precluded her from working more than forty hours per week.

It is clear from the undisputed facts in this case that the position in question requires the employee to work fifty to seventy hours per week. Plaintiff can not do that, therefore, she is not able to perform one of the essential and required functions of the Human Resources Director. As the Court in *Beauford v. Father Flanagan's Boys' Home*, 831 F.2d 768 (8th Cir.1987), *cert. denied* 485 U.S. 938, 108 S.Ct. 1116, 99 L.Ed.2d 277 (1988), pointed out, it is important to recognize that Section 504

> was designed to prohibit discrimination within the ambit of an employment relationship in which the employee is potentially able to do the job in question. Though it may seem undesirable to discriminate against a handicapped employee who is no longer able to do his or her job, this sort of discrimination is simply not within the protection of Section 504.

831 F.2d at 771. Plaintiff has therefore failed to prove that the employer's perception of her impairment amounts to a disability under the statute. Plaintiff simply cannot show that she had a disability for which the statute provides protection. Plaintiff's additional arguments addressing the application of the Rehabilitation Act are of no significance because she has failed to show that she is entitled to protection under the Act in any respect.

For these reasons, defendants' motion for summary judgment on Count I is granted.

**b. The Americans with Disabilities Act**

▮] Analysis under the ADA is quite similar to that under the Rehabilitation Act. Liability attaches under the ADA where

> a qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity.

42 U.S.C. § 12132. To prevail under the ADA, plaintiff must show that: (1) she is a "qualified individual"; (2) she has a disability; and (3) her disability was the basis for discriminatory action by a public entity. *Aurelio v. Rhode Island Dept. of Administration, Division of Motor Vehicles*, 985 F.Supp. 48, 54 (D.R.I.1997). The first and third elements of an ADA claim—whether she is a qualified individual and whether her disability was the basis for discriminatory action—need not be analyzed at this point for plaintiff cannot prove the second element. Tardie cannot establish that she has a disability as defined by this statute, as was the case in regard to the Rehabilitation Act.

As the First Circuit pointed out in *Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 14–15 (1st Cir.1997), it is important to consider the congressional objectives when analyzing the ADA:

> In an effort to eliminate discrimination against individuals with disabilities, the statute prohibits employers from discriminating against a "qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a). The antidiscrimination obligation is unusual in the context of federal civil rights statutes. It imposes not only a prohibition against discrimination, by also, in appropriate circumstances, a positive obligation to make reasonable accommodations. Absent a disability, however, no obligations are triggered for the employer.

The definition of disability is the same under the ADA and the Rehabilitation Act. Therefore, plaintiff's claim under the ADA also fails for the reasons discussed above with respect to the Rehabilitation Act. She has neither a disability which substantially limits her ability to perform a major life activity nor was she regarded as having such a disability. In a similar case where the plaintiff claimed his impairment restricted his ability to work at unduly stressful jobs, the Court said

[Plaintiff] is not significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities. An employee who fails to establish such inability is not disabled under the Act. *Gaul v. AT & T, Inc.*, 955 F.Supp. 346, 351 (D.N.J.1997). For these reasons, defendants' motion for summary judgment on Count II is also granted.

### c. The Family and Medical Leave Act

■ Plaintiff's third claim is that her termination while she was on medical leave violated the FMLA. The FMLA entitles an eligible employee up to twelve weeks leave from work when she has a serious health condition that makes her unable to perform the essential functions of her position. *Price v. Marathon Cheese Corp.*, 119 F.3d 330, 333 (5th Cir.1997). The FMLA also provides that upon return from leave, an employee shall be restored to the position of employment held when the leave commenced or to an equivalent position. *Id.* It is this provision that plaintiff alleges defendants violated when they terminated her employment. Defendants contend, however, that as Tardie was unable to work more than forty hours a week, she was incapable of performing an essential function of the position and, thus, does not come within the ambit of the FMLA. There is merit to this contention.

■ An FMLA plaintiff must "establish, by a preponderance of the evidence, that she is entitled to the benefit she claims." *Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 713 (7th Cir.1997). If plaintiff establishes that defendants discharged her because she took a medical leave pursuant to the FMLA, they have violated Section 2614(a)(1) for failing to restore her to her previous position. *Mosley v. Hedges*, No. 96–C–8349, 1998 WL 182479 at *5 (N.D.Ill. April 14, 1998). The FMLA, however, does not provide limitless protection to employees. An employer can refuse to restore an employee to a previously held position if the employer would have terminated the employee even if she had not taken her FMLA leave. *Id.* Additionally, if an "employee is unable to perform an essen-

tial function of the position because of a physical or mental condition ... the employee has no right to restoration to another position under the FMLA." 29 C.F.R. § 825.214(b).

■ Defendants have made no allegations that plaintiff would have been terminated for reasons unrelated to her inability to work more than forty hours per week. They have, however, asserted that Tardie has no right to restoration to her former position, or another similar position, because she is unable to perform the essential functions of the job. As discussed earlier, the record here reflects that working more than forty hours a week was a vital requirement of the Director of Human Resources position. This is not a case where the job might entail occasional overtime. This particular job required frequent supervision of the various shifts permitting interaction with all employees under plaintiff's supervision, significant administrative obligations, and meetings which regularly required plaintiff's presence after five p.m. On these undisputed facts, the Court must conclude that the ability to work extended hours was an essential function of the position. Therefore, Tardie cannot claim that she could adequately perform the job by only working a forty hour work week. This Court agrees that Tardie had no right to restoration under the FMLA because she could not effectively perform the essential functions of the job by working forty hours a week. Defendants had no obligation to return her to a position which she could no longer fulfill and therefore, defendants motion for summary judgment on Count III is granted.

### d. State Law Claims

Pursuant to 28 U.S.C.A. § 1331, the Court may exercise supplemental jurisdiction over state law claims which clearly "form part of the same case or controversy" that is before the Court and over which the Court has proper jurisdiction. *Eastridge v. Rhode Island College*, No CA 96–458L, 1998 WL 96636 at *7 (D.R.I. March 2, 1998), citing *Iacampo v. Hasbro et al.*, 929 F.Supp. 562, 570 (D.R.I.1996). The state law claims asserted in this case under the Rhode Island Civil Rights of People with Disabilities Act,

§ 42–87–1, et seq., the Rhode Island Fair Employment Practices Act, § 28–5–1, et seq., and the Rhode Island Parental and Family Medical Leave Act, § 28–48–1, et seq., require the same analysis as that utilized for the corresponding federal statutes. *See Hodgens v. General Dynamics Corp.*, 963 F.Supp. 102, 104 (D.R.I.1997); *Newport Shipyard Inc., v. Rhode Island Comm'n for Human Rights*, 484 A.2d 893, 897–98 (R.I. 1984); *Eastridge v. Rhode Island College*, 996 F.Supp. 161 (D.R.I.1998). Summary judgment must be granted as to these state law claims for the same reasons summary judgment was granted with respect to the corresponding federal law claims.

**a. The Rhode Island Fair Employment Practices Act**

 R.I. Gen. Laws § 28–5–7 ("FEPA"), according to the Rhode Island Supreme Court "unmistakably forbids individual acts of discrimination as well as patterns of discriminatory practice." *Eastridge*, 996 F.Supp. 161, 168, citing *Iacampo*, 929 F.Supp. at 574. This statute provides, in relevant part:

**Unlawful employment practices.**—It shall be an unlawful employment practice:

(1) For any employer:

(i) To refuse to hire any applicant for employment because of his or her race or color, religion, sex, handicap, age, sexual orientation, or country of ancestral origin, or

(ii) Because of such reasons, to discharge an employee or discriminate against him or her with respect to hire, tenure, compensation, terms, conditions or privileges of employment, or any other matter directly or indirectly related to employment...

R.I. Gen. Laws § 28–5–7. Although FEPA provides protection from handicap discrimination, which is not addressed in Title VII, FEPA is nonetheless intended to be Rhode Island's analog to Title VII, and the same analytical framework should apply to the FEPA claim as would apply to a Title VII claim. *Hodgens*, 963 F.Supp. at 104.

The burdens of proof for Title VII claims are such that the "plaintiff carries the initial burden of showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely that not that such actions were 'based on a discriminatory criterion illegal under the Act.'" *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 576, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). Therefore, the analytical framework to be applied in these cases requires the employee to first prove a prima facie case by demonstrating that she belongs to a protected group and was then dismissed from a position for which she was otherwise qualified for discriminatory reasons. At that point, the burden shifts to the employer to establish a legitimate and nondiscriminatory explanation for its action. If that occurs, the employee may counter by proving that the proffered reason is a pretext. *Lattimore v. Polaroid Corp.*, 99 F.3d 456, 465 (1st Cir. 1996), citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–805, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

 Plaintiff here cannot show that she was discriminated against because of her handicap by being dismissed from a job for which she was qualified. As discussed previously, plaintiff was dismissed from a job for which she was no longer qualified. There is no need to discuss burden shifting or employer motivation in this case as plaintiff cannot establish a prima facie case of discrimination. For that reason, her claim must fail. Defendants' motion for summary judgment with respect to this claim contained in Count IV hereby is granted.

**b. Rhode Island Civil Rights of People with Disabilities Act**

 The language of the Rhode Island Civil Rights of People with Disabilities Act closely parallels the language of the ADA and the Rehabilitation Act. This Act provides that:

No otherwise qualified person with a disability shall, solely by reason of his or her disability, be subject to discrimination by any person or entity doing business in the state; nor shall any otherwise qualified person with a disability be excluded from participation in or denied the benefits of any program, activity or service of, or, by any person or entity regulated, by the

state or having received financial assistance from the state or under any program or activity conducted by the state, its agents or any entity doing business with the state.

R.I. Gen. Laws § 42–87–2. "Disability" is defined in the same terms as it is defined in the Americans with Disabilities Act and the Rehabilitation Act. *See* R.I. Gen. Laws § 42–87–1. Since the federal claims failed because plaintiff could not establish that she has a qualifying disability under the statutes, so must the state claim fail. Therefore, defendants' motion for summary judgment as to the Civil Rights of People with Disabilities Act claim contained in Count IV must be granted.

### c. The Rhode Island Parental and Family Medical Leave Act

Plaintiff's final claim is a state claim under the Rhode Island Parental and Family Medical Leave Act. This Act provides, in relevant part, that

(a) Every employee who has been employed by the same employer for twelve (12) consecutive months shall be entitled, upon advance notice to his or her employer, to thirteen (13) consecutive work weeks of parental leave or family leave in any two (2) calendar years. The employee shall give at least thirty (30) days notice of the intended date upon which the parental leave or family leave shall commence and terminate, unless prevented by medical emergency from giving notice. . .

(c) The employer may request that the employee provide the employer with written certification from a physician caring for the person who is the reason for the employee's leave, which certification shall specify the probable duration of the employee's leave.

R.I. Gen. Laws § 28–48–2. "Family Leave" is defined by the statute as "leave by reason of the serious illness of a family member." R.I. Gen. Laws § 28–48–1(4). "Family Member" includes "a parent, spouse, child, mother-in-law, father-in-law or the employee himself or herself." R.I. Gen. Laws § 28–48–1(5). This provision clearly is modeled after

the federal Family and Medical Leave Act and should be similarly interpreted.

The federal statute, as discussed above, provides an exception to the general rule of required reinstatement if the employee is no longer able to perform the essential functions of the job. Defendants here contend that this exception applies and, thus, they need not reinstate Tardie to her former position as she can no longer work the hours necessitated by the job. The language of the state statute does not explicitly set forth such an exception and the state courts have not yet ruled on whether such an exception can be implied. However, since the state Act mirrors its federal counterpart in virtually all respects, the General Assembly must have intended the exception to be implicit in the statute itself. To hold otherwise would be to read the statute as forcing employers to keep on their payrolls even those employees who can no longer perform the necessary functions of their jobs. Such a mandate would extend far beyond protecting an employee's position for a short term family medical leave.

The language of the state law clearly indicates that the statute was intended to attain the same objectives as the federal law. Therefore, the exception permitting employers to refuse to reinstate employees who can no longer perform the essential functions of the job must be considered an implicit provision in the state law. Tardie is unable to perform the essential functions of the job of Director of Human Resources. Therefore, summary judgment must be granted on this claim contained in Count IV.

### IV. Conclusion

For the reasons stated above, defendants' motion for summary judgment with respect to all Counts hereby is granted. The Clerk shall enter judgment for defendants on all Counts.

It is so ordered.