**Linda CANIS, Plaintiff,**

v.

**COCA–COLA ENTERPRISES, INC., Defendant.**

**No. CIV. A. 98–120L.**

United States District Court, D. Rhode Island.

May 18, 1999.

---

Judith I. Scott, Westerly, RI, for Plaintiff.

Robert G. Sullivan, Powers, Kinder & Keeney, Inc., Providence, RI, John R. Bode, Miller & Martin, Chattanooga, TN, for Defendant.

## DECISION AND ORDER

LAGUEUX, Chief Judge.

Linda Canis ("Canis" or "plaintiff") supervised production lines that canned and bottled soft drinks for Coca–Cola Enterprises ("CCE" or "defendant"). She suffered from a bone spur and related maladies in one of her feet, and she left work after six months. For a while, she went on short-term disability and then on lighter duty as a guard. Eventually, she lost her job, and CCE denied her claim for long-term disability.

Canis brought this suit under the Americans with Disabilities Act, 42 U.S.C. § 12101, et. seq., ("ADA") and the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et. seq. ("ERISA"). Parallel claims under the ADA and ERISA will always be in tension. The ADA forces Canis to emphasize her ability to do her job while CCE argues that she cannot. Then, ERISA switches the arguments around: CCE stresses Canis' ability to work while she emphasizes her limitations. The tension can hold through preliminary stages of litigation, but in the end, it will almost invariably snap off one of plaintiff's claims.

This case is before the Court on defendant's motion for summary judgment on both claims. On the ADA claim, CCE points to several elements that Canis must prove, and it argues that she has failed in her burden. On the ERISA claim, CCE points to its own decision in refusing disability payments, and it argues that it was not arbitrary and capricious. CCE also argues that Canis failed to exhaust her within-plan appeals.

CCE makes strong arguments based on an extensive record, but this is still a preliminary motion during which Canis enjoys the benefit of inferences. This Court finds that material facts are still in dispute as to every element of the ADA claim and also concludes that CCE's agent was arbitrary when it interpreted the long-term disability plan, and therefore, there are material facts in dispute as to the ERISA claim as well.

For these reasons, this Court denies CCE's motion for summary judgment on both claims.

### I. Background

Canis began work at defendant's Needham Heights facility in February 1995. She supervised two and sometimes all four of the production lines. Canis regularly worked 10–12 hour days, walking the lines to monitor workers and solve problems. Often the machines malfunctioned, and flawed cans or bottles—for example, those with misapplied labels—needed to be removed from the line. Plaintiff estimated that she walked 25 miles per shift, mostly on concrete floors and always in work boots.

### A. Facts Relating to Canis' Dismissal

In June 1995, Canis felt tenderness in her foot. It turned out that she suffered from a bone spur and plantar fasciitis, and the pain increased to the point that she left work early on August 18, 1995. After seeing Dr. Susan Chabot, Canis stayed out of work until November 13, 1995, receiving short-term disability payments.

To smooth Canis' transition back to work, CCE put her on less-taxing duty when she returned. She worked in the plant's guard shack, opening the gate and monitoring trucks. She could wear sneakers there, although the parties dispute whether she sat or stood most of the time.

On January 29, 1996, Canis returned to her production supervisor position. Her supervisor Mike Hall had given her the choice of more short-term disability leave

or a return to the floor. She chose to resume her old job. She was allowed to use an office adjacent to the production line. She was given a walkie-talkie. She only supervised a single production line. However, by the end of the first week, she was in pain again.

Canis left work early on February 2, 1996 and never returned. The parties disagree as to whether she was sent home or left on her own accord. Canis believes that her supervisors treated her unfairly in that final, partial week. There was an incident with a glue machine that she believes was used as a pretext to fire her. Either way, she went back on short-term disability, and in March 1996, she had surgery on her foot.

### B. *Facts Relating to Canis' Disability Request*

Canis received short-term disability benefits from February to July 1996. Over the summer, Canis says that she tried to negotiate a return to her job, perhaps using a golf cart to move around the plant floor. That never bore fruit. In August 1996, Canis applied for long-term disability payments from CCE's insurance plan, which is a qualified plan under ERISA.[1] At that time, benefit determinations under the plan were made by employees of the Fortis Benefits Insurance Company. On February 24, 1997, Fortis supervisor Mary Bryant rejected Canis' request. (*See* Letter from Bryant to Canis of 2/24/97, at 1–2 (attached as Exhibit 8 to Canis Deposition) [*hereinafter* Bryant Letter].)

Bryant rejected Canis' claim because she concluded that Canis had not been disabled for the six-month qualifying period and also because she found that Canis was able to perform the position of a "production supervisor" as defined in the *Dic-*

*tionary of Occupational Titles.* Bryant stated that Canis could only receive long-term disability benefits if she could not work as a production supervisor in the general economy.

### II. *Standard for Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on summary judgment motions:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). The critical inquiry is whether a genuine issue of material fact exists. "Material facts are those 'that might affect the outcome of the suit under the governing law.'" *Morrissey v. Boston Five Cents Sav. Bank,* 54 F.3d 27, 31 (1st Cir.1995) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). "A dispute as to a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.*

On a motion for summary judgment, the Court must view all evidence and related inferences in the light most favorable to the nonmoving party. *See Springfield Terminal Ry. Co. v. Canadian Pac. Ltd.,* 133 F.3d 103, 106 (1st Cir.1997). "[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." *Coyne v. Taber Partners I,* 53 F.3d 454, 460 (1st Cir.1995). Similarly,

---

1. This Court faces an increasing number of ERISA disputes. This case comes after published decisions that involved defining an ERISA plan, *see Champagne v. Revco D.S., Inc.,* 997 F.Supp. 220 (D.R.I.1998); the standard of review, *see Vukic v. Melville Corp.,* 39 F.Supp.2d 163 (D.R.I.1999) (arbitrary and ca-

pricious review); *Tavares v. UNUM Corp.,* 17 F.Supp.2d 69 (D.R.I.1998) (de novo review); *Grady v. Paul Revere Ins. Co.,* 10 F.Supp.2d 100 (D.R.I.1998) (same); and conflict between the summary and plan documents, *see Mattias v. Computer Sciences Corp.,* 34 F.Supp.2d 120 (D.R.I.1999).

"[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem more plausible, or because the opponent is unlikely to prevail at trial." *Gannon v. Narragansett Elec. Co.,* 777 F.Supp. 167, 169 (D.R.I.1991).

### III. *The ADA Claim*

### A. *The law of the ADA*

■ To prove an ADA claim, a plaintiff must establish:

(1) that she suffered from a "disability" within the meaning of the ADA;

(2) that she was able to perform the essential functions of her job, either with or without reasonable accommodation; and

(3) that her employer discharged her in whole or in part because of that disability.

See *Tardie v. Rehabilitation Hospital of Rhode Island,* 168 F.3d 538, 541 (1st. Cir. 1999); *Feliciano v. State of Rhode Island,* 160 F.3d 780, 784 (1st Cir.1998).

The regulations promulgated under the ADA define "disability" as:

(A) having a physical or mental impairment which substantially limits one or more of an individual's major life activities;

(B) having a record of such an impairment; or

(C) being regarded as having such an impairment.

See 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g). *See also Tardie,* 168 F.3d at 541.

Walking is one of the major life activities outlined by the Equal Employment Opportunity Commission. *See* 29 C.F.R. § 1630.2(i).

"Substantially limits" as defined by the EEOC regulations means:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner, or duration under which an individual can perform a particular life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j).

### B. *Applied to this case*

This Court addresses four issues raised by CCE:

● whether Canis has a limitation of her ability to work

● whether Canis has a limitation of her ability to walk

● whether Canis is qualified to be a production supervisor

● whether CCE made reasonable accommodations

The quarrels in this case can be narrowed at this stage, but summary judgment is inappropriate because only the first issue can be decided on the undisputed facts.

### 1. *Canis suffered no limitation of her ability to work*

■ Canis failed to prove that she is limited in the major life activity of working. She fails the First Circuit's test under *Tardie* because she is qualified for a vast number of jobs that would not require her to walk more than four hours a day. This writer found that Tardie could not establish that she had a disability as defined by the ADA. *See Tardie,* 168 F.3d at 543; *Tardie v. Rehabilitation Hospital of Rhode Island,* 6 F.Supp.2d 125, 130–32 (D.R.I.1998). A person who can work 40 hours a week does not have a substantial impairment of her ability to work because most jobs only require 40 hours a week. *See Tardie,* 6 F.Supp.2d at 130. Similarly, a person who can walk four hours a day can find employment as a production supervisor.

2. *Canis' ability to walk is a jury question*

■ The major life activity of walking is distinct from the major life activity of working. Canis cannot walk as well as the average person in the general population. Her doctor has determined that she can walk or be on her feet only four hours at a time. This is a permanent significant restriction of her ability to walk. A reading of the plain language of the ADA and 29 C.F.R. § 1630.2(j) suggests that she is covered by the statute. First Circuit precedent requires that, where a plaintiff puts forth sufficient evidence, the question be submitted to a jury. *See Criado v. IBM Corp.*, 145 F.3d 437, 441–43 (1st Cir.1998) (holding that this is a jury issue).

The Supreme Court recently heard a trio of cases that raise the issue of which disabilities are covered by the ADA. *See Albertsons, Inc. v. Kirkingburg*, —— U.S. ——, 119 S.Ct. 791, 142 L.Ed.2d 654 (1999) (granting certeriori); *Sutton v. United Air Lines, Inc.*, —— U.S. ——, 119 S.Ct. 790, 142 L.Ed.2d 653 (1999) (same); *Murphy v. United Parcel Service, Inc.*, —— U.S. ——, 119 S.Ct. 790, 142 L.Ed.2d 653 (1999) (same). However, those appeals relate to plaintiffs with correctable maladies. This case and the *Criado* precedent are so clear that the Supreme Court's decision in those matters should have no effect here.

The First Circuit's *Tardie* decision does not control here because Canis has offered evidence about her walking that is different from *Tardie's* evidence about her working. As explained above, *Tardie* could work 40 hours a week, and most jobs only require 40 hours a week. *See Tardie*, 6 F.Supp.2d at 130. In contrast, Canis cannot walk more than four hours a day. Most people can endure more than that,

and many people walk more than four hours every day.

CCE points to a Third Circuit decision in which it was held that a limp caused by degenerative hip disease did not "substantially limit" a plaintiff's ability to walk. *See Kelly v. Drexel University*, 94 F.3d 102, 106–07 (3d Cir.1996). The *Kelly* panel upheld a district court finding of "no disability" where the plaintiff had proven only trouble climbing stairs that required the plaintiff to move slowly and hold the handrail. *See id.* at 106.

■ However, Canis cannot solve her problem by holding a handrail, by slowing down or by enduring mild pain like the plaintiffs in those cases cited by the *Kelly* Court. Canis' doctor has ordained that she not walk more than four hours at a time.[2] That is a significant limitation. The average person can walk far more than that without pain, let alone without violating a medical prescription. At a minimum, the First Circuit has mandated that, where a plaintiff has provided as much proof as Canis, the question of whether she is disabled under the ADA be left to the jury. *See Criado*, 145 F.3d at 441–43. *But see Poindexter v. Atchison, Topeka & Santa Fe Ry. Co.*, 168 F.3d 1228, 1232 (10th Cir.1999) (whether claimed affliction is an impairment under the ADA is an issue of law left to the court).

Similarly, this Court is not persuaded by the other cases cited by CCE: *Penchishen v. Stroh Brewery Co.*, 932 F.Supp. 671, 674–75 (E.D.Pa.1996) (plaintiff not disabled when she walks slowly), and *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726–27 (5th Cir.1995) (turning on the activity of working).

■■ Therefore, this Court concludes that a jury will have to decide whether Canis is disabled under the ADA.[3] She has

---

**2.** Because working and walking are distinct major life activities, this Court does not look to the requirements of Canis' job to gauge the limits on her ability to walk.

**3.** Canis has claimed a jury trial but seeks both legal and equitable relief on the ADA claim.

The issue of how the trial will proceed will have to be addressed at a later time.

This Court has long considered it settled that a plaintiff in an ERISA case is *not* entitled to a jury trial. See *Turner v. Fallon Community Health Plan, Inc.*, 953 F.Supp.

presented more than enough evidence to survive a motion for summary judgment.

### 2. *Whether CCE violated the ADA is in dispute*

CCE tries to avoid trial by arguing that even if Canis is protected by the ADA, the company did not violate the law because Canis was incapable of supervising the bottling lines and because CCE provided reasonable accommodations. Those issues are in even-greater dispute than the extent of Canis' disability.

■ First, it is unclear whether Canis is qualified for this particular job. Canis argues that she is only limited in her ability to walk and that she could supervise the line if she just had a way to move around the plant, specifically sneakers or a golf cart. CCE argues that a person who cannot walk more than four hours cannot do the job. It points to the intricate, unpredictable machinery and the requirement that supervisors lean, crawl, stand and generally move around the conveyor belts. CCE says that Canis proved her lack of qualifications when she applied for long-term disability benefits. Factually, the parties disagree about Canis's physical ability and about the job's requirements. At this summary judgment stage, this Court cannot assume that a production supervisor must walk more than four hours a shift.

■ Also, it is unclear whether CCE made reasonable accommodations. CCE argues that it provided a raft of arrangements, including a light-duty period when Canis could acclimate to work, an office where she could rest and a walkie-talkie that she could use. The most weighty of these may turn out to be that CCE gave Canis a three-month leave to heal and restructured her job so that she oversaw a single bottling line. Canis argues that most of CCE's "accommodations" were unrelated to her condition, specifically that the room and radios were available to any supervisor and that the job restructuring was done as a result of economics. She says she should have been allowed to wear sneakers and to drive a golf-cart during her shifts. Factually, the parties disagree about what CCE allowed (including whether sneakers were allowed) and what motivated the company. Although the First Circuit has held that a leave of absence can be a reasonable accommodation, a single leave does not absolve the employer from making other provisions. *See Criado*, 145 F.3d at 443–45.

In deciding this motion for summary judgment, this Court must view all evidence and related inferences in the light most favorable to Canis. The evidence, when tinted in that fashion, suggests that Canis was qualified for the job and that CCE did not make the reasonable accommodations that would have allowed her to supervise the lines. Thus, the summary judgment standard precludes this Court from finding for CCE without hearing the complete evidence. *See Soto–Ocasio v. Federal Express Corp.*, 150 F.3d 14, 19 (1st Cir.1998) (ADA cases depend on their facts).

■ As part of her heavier burden at trial, Canis will have to prove each element of her ADA claim to a jury. That will include proving that there were reasonable accommodations that would have made her qualified for *all essential aspects* of the job. *See Feliciano*, 160 F.3d at 784–

419, 422 (D.Mass.1997) (collecting cases); *Kelly v. Blue Cross & Blue Shield of Rhode Island, Inc.*, 814 F.Supp. 220, 222 (D.R.I. 1993) (this writer noting that ERISA preemption would strike a plaintiff's jury demand). *See also Recupero v. New England Telephone & Telegraph Co.*, 118 F.3d 820, 831 (1997) (noting that the First Circuit has not decided this issue). *But see Higginbotham v. Worth*

*Publishers, Inc.*, 820 F.Supp. 48, 49–50 (D.P.R.1993) (allowing jury trials in limited instances).

Generally, jury issues are decided before a judge decides the equitable issues. *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 472–73, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962). So trial on any jury issues under the ADA would be held before this Court decided the ERISA issues.

86. *See also Tardie,* 168 F.3d at 544 (altering an essential aspect of the job is not reasonable); *Laurin v. Providence Hospital,* 150 F.3d 52, 56 (1st Cir.1998) (same). She must also prove that CCE's efforts on her behalf did not amount to reasonable accommodations based on the circumstances at the time. The issue is not whether 20–20 hindsight suggests accommodations *in addition to* those that CCE considered. *See Feliciano,* 160 F.3d at 786–87 (plaintiff could not proffer accommodations that she did not request or that were unavailable at the time in question).

However, Canis has produced enough evidence to warrant a trial because there are several genuine disputes over material facts.

## III. *The ERISA Claim*

### A. *ERISA's Standard of Review*

■ This Court reviews CCE's actions to decide whether CCE was arbitrary and capricious when it denied benefits to Canis. The summary of CCE's ERISA plan provided to employees [*hereinafter* the "CCE Summary"] clearly states:

Who Administers the Plan

Different plans are administered by different committees. These committees have discretionary authority to construe the terms of the plans and make determinations on questions that may affect your eligibility for benefits.

(*See* Excerpted Portion of Handbook, at G–3 (attached as Exhibit 10 to Canis Deposition) [*hereinafter* CCE Summary].) This is exactly the kind of language that the Supreme Court has said will trigger arbitrary and capricious review. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 114, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Grady v. Paul Revere Life Ins.*

4. Unfortunately, this Court has not seen a copy of the short-term disability section of the CCE Summary. If that portion of the employee handbook is included in the record, then neither party has cited it. However, Canis mentions this language in her affidavit.

*Co.,* 10 F.Supp.2d 100, 110 (D.R.I.1998). Any reader would understand that the committees have discretion to construe the terms of the plan. Therefore, this Court looks to see if that discretion was used reasonably, not whether this Court would have made the identical decision.

### B. *CCE Was Arbitrary When It Denied Benefits*

The CCE Summary provided that benefits would be paid after an employee was disabled. To explain, it noted that:

You are considered totally disabled if an illness or injury keeps you from doing the material duties of *your job.* After three years of disability, you're considered disabled if you cannot be employed *in any other occupation for which you are qualified* by education or training. (emphasis added)

(Excerpted Portion of Handbook, at S–4 (attached as Exhibit 9 to Canis Deposition) [*hereinafter* CCE Summary].)

Acting for CCE, Bryant interpreted "your job" to mean that an employee would receive benefits only if she could not fulfill the duties of her job description. (*See* Bryant Letter at 1–2.) Bryant looked to the descriptions in the *Dictionary of Occupational Titles.* If a person could do that job as described anywhere in the general economy, then that person would not be regarded as disabled.

Canis argues that this interpretation was arbitrary because "your job" really means the actual job that an employee was doing, at CCE. In short, Canis argues that an employee should be considered disabled if she cannot perform the material duties of her job at CCE. For support, Canis points to CCE's Summary that uses "your regular job" when discussing short-term disability.[4] In that context, CCE inter-

(*See* Second Affidavit of Linda Canis at ¶ 7, ¶ 10.) On a motion for summary judgment, this Court must assume that she is accurate.

If the wording of the Summary is not as Canis sets forth in her affidavit, then this

preted "your regular job" to mean the particular job that Canis did for CCE, not production supervisors overall. Canis argues that it is arbitrary to interpret the words in different ways in a single ERISA plan.

■ This Court will not disturb a plan administrator's interpretation if it is reasonable. *See Terry v. Bayer Corp.*, 145 F.3d 28, 40 (1st Cir.1998). It is irrelevant whether this Court agrees with the decision or whether the employee offers a competing reasonable interpretation. To uphold the administrator, this Court need only find that the decision-making was reasonable. *See Vukic v. Melville Corp.*, 39 F.Supp.2d 163, 165 (D.R.I.1999).

■ This Court concludes that CCE acted arbitrarily and capriciously when it interpreted "your job" in the CCE Summary to mean all production supervisor jobs in the general economy. CCE had earlier interpreted "your regular job" to mean Canis' specific job at the Needham Heights plant. It had paid her short-term disability because she could not fulfill the duties of "her regular job." This definition is not debatable. It was established by CCE, and Congress mandated in ERISA that these plan summaries be "sufficiently accurate and comprehensive to reasonably apprise" the plan participants of their rights under the plan. 29 U.S.C. § 1022(a). Thus, it was arbitrary and unreasonable to change the definition in a single ERISA plan; mutable definitions make the CCE Summary inaccurate. CCE cannot argue that this creates a ridiculous result because the plain language of the CCE Summary distinguished between "your job" and "any other occupation for which you are qualified." Therefore, an employee such as Canis who cannot do her job but could do other similar jobs in the general economy would be eligible for only three years of benefits.

■ Nor can CCE look to the CCE Plan Documents to interpret the words

Court will reconsider this issue at trial or on a

"your job" in the CCE Summary. Where an ERISA plan summary and the plan documents contradict or conflict with each other, the summary controls. *See Mattias v. Computer Sciences Corp.*, 34 F.Supp.2d 120, 125 (D.R.I.1999) (collecting cases). "Your job" had a plain meaning under the contract. CCE had already interpreted it to mean the employee's actual job for the company. To import the term "your occupation" from the CCE Plan Documents would contradict the Summary and be ineffective.

Thus, this Court finds that CCE acted arbitrarily when it defined "disabled" to mean that Canis had to be unable to fulfill the duties of her job description anywhere in the general economy. CCE had already interpreted "your regular job" to be Canis' actual position in the company. That settles the matter.

As discussed in the ADA section, there is still a genuine dispute over whether Canis was unable to fulfill the duties of a production supervisor at the Needham Heights plant so this issue must still be resolved.

### C. *Did Canis Exhaust Her Remedies?*

■ To pursue her ERISA claim in this Court, Canis must have exhausted her administrative remedies, including the contract-based appeals. *See Morais v. Central Beverage Corp. Union Employees' Supp. Retirement Plan*, 167 F.3d 709, 712 n. 4 (1st Cir.1999).

The CCE Summary sets out appellate procedures for employees who have had their disability claims denied:

You will be provided written notice if your claim for benefits has been denied, setting forth the specific reason for denial. Any denial of benefits may be appealed. Any appeal generally must be made in writing within 60 days after your receipt of written notice of denial of your claim. You can send your ap-

subsequent motion.

peal to the appropriate plan administrator listed on page G–3.

(*See* CCE Summary at G–2.) On Page G–3, the plan listed the Welfare Appeals Committee and an Atlanta address.

It is undisputed that Canis did not appeal to that Committee at that Atlanta address.

Instead, Canis argues that CCE changed the appellate procedure. In a February 1998 letter to Canis' attorney, Fortis benefit specialist Donna Stevens said that "any further appeals will need to be directed to Ms. Carol Herring, Coca–Cola Bottling Co. of NE (617)455–7841." (Letter from Stevens to Scott of 2/10/98 at 1 (attached to Second Affidavit of Linda Canis).) Coca–Cola Bottling Company of New England is a division of CCE. As late as December 1997, Stevens had assured Canis' attorney that Fortis was reviewing the case. (*See* Letter from Stevens to Scott of 12/9/97 at 1 (attached to Second Affidavit of Linda Canis).) Therefore, the February 1998 letter served to deny Canis' claim for disability, and it directed her to appeal to a CCE employee in Needham Heights.

 Certainly, there is a material issue of fact as to what appeals procedure Canis needed to follow. Canis says that she appealed to Carol Henning as directed, and she never received a response. (*See* Second Affidavit of Linda Canis at ¶ 42–43.) CCE is correct that an employee may not save her complaints for litigation rather than the review procedure. *See Drinkwater v. Metropolitan Life Ins. Co.*, 846 F.2d 821, 825 (1st Cir.1988). However, Canis did not frustrate the intent of ERISA if she followed the appellate procedure that her employer laid out for her.

The question remains whether Stevens and Fortis had the authority—apparent or otherwise—to change the appellate procedure.[5] The CCE Summary was clear that

appeals went to Atlanta. Stevens was equally clear that Canis should appeal to Herring in Needham Heights. Canis could have protected herself by appealing to both, but it may be that she fulfilled ERISA's mandate.

Thus, there is a genuine dispute of material facts, and this case is inappropriate for summary judgment.

## CONCLUSION

CCE is correct that Canis' claims appear to be mutually exclusive. Specifically, Canis cannot win the ADA claim without proving that she was capable of supervising the Needham Heights bottling lines with a reasonable accommodation, and she cannot win the ERISA claim without proving that she was incapable of performing that same job. However, this Court declines to apply judicial estoppel at this stage. *See Soto–Ocasio*, 150 F.3d at 19 (discussing preclusive effect of disability claim on ADA plaintiff). Canis is allowed to argue in the alternative, and even if this Court were inclined to apply estoppel, CCE only raised that point in a footnote in its reply memorandum in support of this motion. Unless Canis can show that her situation deteriorated between the time she was forced out of work and when she applied for benefits, there will come a time when she must fish or cut bait. That time has not yet arrived.

For the preceding reasons, CCE's motion for summary judgment is denied as to both claims. Canis bears the burden of litigating a raft of issues on those claims. Those include, but may not be limited to,:

● whether limits to Canis' walking ability make her disabled under the ADA

● whether Canis can fulfill the duties of a production supervisor at the CCE plant under ADA caselaw

● whether CCE provided reasonable accommodations

5. In her pleadings, Canis floats the argument that because Herring never responded, Canis never had a final decision that she could appeal to Atlanta. This Court notes that Canis thought she had enough of a final decision to appeal to this Court.

- whether Canis can fulfill the duties of a production supervisor at the CCE plant under ERISA caselaw

- what procedure Canis should have used to appeal the denial of her disability claim

It is so Ordered.