Catherine LISTON, Plaintiff,

v.

**UNUM CORPORATION OFFICER SEVERANCE PLAN, et al., Defendants.**

**No. 01–CV–80–P–S.**

United States District Court, D. Maine.

July 17, 2002.

Lawrence C. Winger, Attorney at Law, Portland, ME, for Catherine F. Liston.

Geraldine G. Sanchez, Byrne J. Decker, Pierce, Atwood, Portland, ME, for defendants.

## ORDER

SINGAL, District Judge.

A former officer of UNUMProvident Corporation sued her former employer, its severance plan, and the plan administrator to recover benefits allegedly due pursuant to the plan's "Change of Control" provisions. Presently before the Court are Plaintiff's Motion for Additional Discovery (Docket # 35) and Defendants' Motion for Summary Judgment (Docket # 27). For the following reasons, the Court DENIES Plaintiff's Motion and GRANTS Defendants' Motion.

## I. LEGAL STANDARD

The Court will grant a motion for summary judgment if the record discloses that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). An issue is "genuine" if it could be resolved in favor of the nonmoving party by a rational fact finder drawing reasonable inferences. *See, e.g., Ward v. Massachusetts Health Research Inst.*, 209 F.3d 29, 32 (1st Cir.2000). A fact is "material" if it could affect the outcome of the case under governing law. *See, e.g., Hinchey v. NYNEX Corp.*, 144 F.3d 134, 140 (1st Cir.1998). The following facts are undisputed.

## II. FACTS

Plaintiff Catherine Liston is a former officer of UNUM Corporation ("UNUM"), a Delaware corporation. As an officer, she participated in Defendant UNUM Corporation Officer Severance Plan (the "Plan"). UNUM adopted the Plan, in part, to provide a financial safety net for its officers whose jobs were "eliminated" as a result of a "change of control" of the company, such as a merger. The Plan defined "job elimination" arising from a change of control as any of the following:

The significant adverse reduction or alteration in the nature and status (other

than title) of the officer's position, duties or responsibilities immediately prior to or within 365 days of the change in control;

The lack of any re-employment opportunity that would utilize the officer's professional skills and abilities;

The involuntary termination of the officer for reasons other than performance failure or for cause; [or]

The failure or inability of UNUM Corporation to obtain a satisfactory agreement to assume and agree to honor the terms of this subsection following a change in control.

(*See* Def.Mot. for Sum.J. at ex. 2, p. 11 (Docket # 27).)

The Plan gave the company the ability to amend its provisions, but required that "[a]ny such amendment, termination, change, elimination, or substitution ... be approved in writing by the Senior Vice President of Human Resources of UNUM Corporation." (*Id.* at p. 12.) However, it limited UNUM's ability to make amendments around the time of a "change of control":

With respect to the Change of Control provision, such provision may be amended unless such amendment occurs within 12 months of a Change of Control. Further, any other amendment of the Plan that occurs within 12 months of a Change of Control may not operate to reduce any of the benefits that would otherwise be provided under the Change of Control provision absent such an amendment.

(*See id.*)

The Plan Administrator, Defendant Robert Cornett, oversaw the Plan. Short of making amendments, the Plan granted him "full discretion to make determinations as to the right of any person to a benefit in this Plan ... to construe and interpret the terms of this Plan, decide questions of eligibility, and determine the amount and time of payments of any benefits due...." (*See id.* at 10.) An Amendment to the Plan adopted February 23, 1999, further gave him explicit "discretionary authority to control and manage the operation and administration of the Plan," including "construing and interpreting terms" and "making rules and regulations." (*See id.* at ex. 2(A).)

On June 30, 1999, UNUM merged with Provident Companies, Inc., creating a new company, Defendant UNUMProvident Corporation. The parties agree that this amounted to a "change of control" as defined by the Plan. UNUMProvident adopted the Plan, and Cornett continued as Plan Administrator. Shortly after the merger, he issued an "Administrative Rule" purporting to define some of the terms in the Plan's Change of Control provision. In pertinent part, the Administrative Rule read

1. A significant adverse reduction or alteration in the nature and status (other than title) of the officer's duties or responsibilities means any one of the following:

- a loss of the officer's position where no opportunity exists to work at either the purchaser ..., the vendor ..., or the survivor of a merger ... other than a project assignment;

- a loss of the officer's position where the only opportunity to work at either the purchaser ..., the vendor ..., or the survivor of a merger ... involves a position with skills and abilities outside of the skills and abilities the officer utilizes in his or her current position;

- a change in the officer's position from a manager or director of a major unit to an individual contributor in that unit or another unit; or

• a reduction of more than 10% of the base salary the officer was receiving immediately prior to the change in control.

\* \* \* \* \* \*

2. An officer who declines a reemployment opportunity in a comparable position which does not require the officer to relocate to a place of employment more than 50 miles from his or her location immediately prior to the change in control shall not be considered involuntarily terminated by reason of job elimination.

3. An officer who accepts a reemployment opportunity in a comparable position regardless of whether such position requires him or her to relocate to a place of employment more than 50 miles from his or her location immediately prior to the change in control, shall not be considered involuntarily terminated by reason of job elimination.

4. A "comparable position" means a position within the same functional area which requires similar skills and abilities the officer utilizes in his or her current position and does not result in a reduction of more than 10% of the base salary he or she was receiving immediately prior to the change in control . . .

5. A "reemployment opportunity" means a reemployment opportunity with UNUM . . . or the survivor of a merger involving UNUM. . . .

(*Id.* at ex. 2(D).)

Pre-merger, Liston worked as the "Vice President of LTD Benefits" in UNUM's Portland, Maine, office. After the merger, Liston continued working in a similar position for the new company, but with the title of "Vice President, Portland Customer Care." Liston believed, however, that the new position differed from her former position in several important respects. Her workdays grew longer, and she trav-eled more frequently. She lost discretion to make strategic decisions, and to approve certain expenses and salary promotions for her subordinates. Finally, the company limited its reimbursement for her calls home when she was on the road. Some of the changes were not specific to Liston, but reflected a company-wide shift in managerial policy.

Liston viewed the changes as a "significant adverse reduction or alteration in the nature and status" of her employment. Accordingly, in March 2000 she submitted a request to UNUMProvident for benefits due under the Plan's Change of Control clause. UNUMProvident refused, informing Liston by .letter dated April 4, 2000, that after the merger she had been offered a "comparable position" with the company that precluded a benefits award. "Your contention," UNUMProvident continued, "that there has been a reduction in decision-making authority and less strategic focus in your role, even if true, does not constitute a significant adverse alteration in the nature and status of your position." The letter invited Liston to provide additional facts that might support her benefit request.

Liston, represented by counsel, appealed the decision to the Plan's "Review Committee" by letter dated June 2, 2000. In her appeal, she described changes in her position she felt warranted a grant of severance benefits. She detailed a threefold increase in her travel requirements during the first quarter of 2000; an increase in her weekly hours worked by roughly twenty hours per week, with increased weekend and evening work as well; and a decrease in the strategic decision-making responsibilities in her job, accompanied by a loss of authority to make salary and expense decisions regarding her subordinates.

The Review Committee denied Liston's appeal in a two-page letter dated June 13,

2000. The Committee explained that it was denying benefits because Liston had been offered a "comparable position," and because changes in travel requirements, work hours and company-wide expense and financial control procedures "do not constitute a job elimination according to the Plan." Again, UNUMProvident invited Liston to produce additional information that might support her claim request, and informed her of her right to appeal the Committee's decision to the Benefit Administrative Committee (the "BAC"), a body headed by Cornett.

On August 3, 2000, Liston appealed the Committee's decision to the BAC. She reiterated her earlier arguments, and suggested that the company's grant of benefits to five former UNUM officers, whom she named, entitled her to benefits as well. On August 28, 2000, Liston and her attorney met with Cornett and presented her case. Several months later, in early November 2000, the BAC met to consider Liston's appeal. In making its decision, it took into account all of the arguments Liston had made in her letters to the company. It also considered the argument that other UNUMProvident officers had received benefits under the Plan's Change of Control provision, even though Liston had not. The BAC briefly discussed the case of each officer Liston had named.

In a detailed ruling dated December 1, 2000, the BAC denied Liston's appeal. It explained that Liston's pre-merger and post-merger jobs were similar enough to warrant denial of benefits. It contended that the changes in travel, work hours and discretionary authority did not constitute a significant adverse reduction or alteration in the nature and status of her job. It further denied that the officers who had received benefits were similarly situated to Liston, and maintained that their cases were therefore irrelevant to hers. The BAC's denial of Liston's request was the company's final decision as to her case.

In response, Liston filed a two-count Complaint in this Court pursuant to 29 U.S.C. § 1132(a)(1)(B) and (c)(1).[1] In her pretrial discovery requests, Liston asked the Court for permission to discover all of UNUMProvident's records relating to other "similarly situated" officers who had sought benefits after the merger. The Court, by Order of the United States Magistrate Judge, permitted Liston to discover any information related to other benefits claims the BAC had considered deciding her case, but refused to allow her to discover the details of other claims the BAC had not addressed at the November 2000 meeting. (See Docket # 18). Discovery closed in mid-April 2002. UNUMProvident, the Plan, and Cornett subsequently moved for summary judgment (Docket # 27).

## III. PRELIMINARY MATTERS

As required by Local Rule 56, Defendants filed a Statement of Material Facts with their Motion (Docket # 28). Liston, in turn, filed a timely response (Docket # 31), and an Opposing Statement of Material Facts (Docket # 32). Liston's Opposing Statement did not present any new facts. The UNUM Defendants filed a reply brief addressing Liston's legal arguments on May 30, 2002 (Docket # 33). The Court took the Motion under advisement as of that date.

■ On June 6, 2002, Plaintiff filed a "Supplemental Statement of Material Facts" (Docket # 36), followed by a "Second Supplemental Statement of Material Facts" (Docket # 37) two weeks later. Neither of these Statements was accompa-

---

**1.** The parties later stipulated to dismissal of the § 1132(c)(1) claim (Docket # 30).

nied by a legal brief explaining the relevance of the facts cited, or why the facts could not have been submitted in Plaintiff's Opposing Statement. The filing of these statements represents a fundamental failure to comply with the provisions of Local Rule 56, and for that reason the Court will ignore them. *See Currier v. Town of York,* No. 01–CV–68–P–C, 2002 WL 1146773 at *5 (D.Me. May 30, 2002); *Mulkern v. Cumberland County,* No. 00–CV–382–P–C, 2001 WL 1519409 at *15 n. 44 (D.Me. Nov.30, 2001).[2]

Around the same time, Plaintiff also moved for additional discovery regarding "similarly situated" officers at UNUMProvident, and for an *in camera* inspection of an unredacted version of the minutes of the BAC's November 2000 meeting regarding Plaintiff's benefit claim (Docket # 35). These requests are also untimely. *See* Local Rule 16.2(e). Moreover, the Magistrate Judge has already ruled upon the issue of "similarly situated" officers, and the Court sees no reason to reopen it. (*See* Magistrate Judge's Order, March 19, 2002 (Docket # 18).)

## IV. DISCUSSION

Plaintiff alleges that the Plan Administrator exceeded his discretionary powers by interpreting the Plan narrowly, and by denying her severance benefits under this narrow interpretation. She brings her claim pursuant to section 1132(a)(1)(B) of the federal Employee Retirement Income Security Act (ERISA). 29 U.S.C. § 1132(a)(1)(B). The parties agree that the Plan is governed by ERISA.

## A. Standard of Review

■ The district court in an ERISA benefits review case essentially acts as an appellate body. Courts review benefits decisions by plan administrators de novo, *unless* the benefits plan at issue grants the administrator discretion to make benefits decisions. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Terry v. Bayer Corp.,* 145 F.3d 28, 37 (1st Cir.1998) (citing *Recupero v. New Eng. Tel. & Tel. Co.,* 118 F.3d 820, 827 (1st Cir.1997)). If a plan grants that discretion, courts review the merits of a benefits determination only for "abuse of discretion," or for arbitrariness and capriciousness.[3] *Firestone,* 489 U.S. at 115, 109 S.Ct. 948. Likewise, if a plan grants the administrator discretion to interpret or construe the plan, courts review the interpretations only for abuse of discretion. *Id.; Terry,* 145 F.3d at 40.

Plaintiff concedes that the Plan nominally grants Defendant Cornett discretion, as Plan Administrator, to interpret and construe the Plan's provisions, and to make benefits determinations. Plaintiff argues, however, that Cornett's discretion is circumscribed by the Plan's amendment provisions, which limit how and when the company may substantively alter the Plan. She insists that the amendment provisions pertaining to changes of control prevent the Plan Administrator from interpreting plan terms around the time of a merger, or at least that they make it unclear whether he has the authority to do so. This limitation on the Administrator's discretion, Plaintiff's contends, entitles the Court to engage in de novo review of his actions.

This simply is not the case. The Plan does not delegate any ability to amend the Plan to the Plan Administrator. It re-

---

**2.** On June 25, 2002, Defendants filed a Motion to Strike Plaintiff's "Supplemental" statements of material fact (Docket # 40). The Motion is now moot.

**3.** Courts treat "abuse of discretion" and "arbitrary and capricious" review as one-and-the-same. *See Terry,* 145 F.3d at 37 n. 6.

quires, instead, that the Senior Vice President of Human Resources approve any fundamental change. Amendment of the Plan, plainly, is not the Administrator's job. Nonetheless, he clearly and unambiguously possesses the discretion to *interpret* its provisions, in a reasonable manner, any time he chooses. Therefore, pursuant to *Firestone*, the Court reviews the Administrator's decision for abuse of discretion.

### B. Scope of Record on Judicial Review

The Court considers only the administrative record in determining whether the Administrator abused his discretion. (*See* Magistrate Judge's Order, March 19, 2002 (Docket #18)); *Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 823–24 (10th Cir.1996) (collecting cases); *De Dios Cortes v. MetLife, Inc.*, 122 F.Supp.2d 121, 129–30 (D.P.R.2000).

### C. Cornett's Interpretation of Plan Terms

■ In his Administrative Rule of July 6, 1999, the Plan Administrator interpreted the Plan's Change of Control provision to deny benefits to any officer who suffered a job loss, but was offered a "comparable position" with the company. Plaintiff argues that this Rule effectively amended the Change of Control provision, substantively altering the Plan language so as to preclude Plaintiff's benefit award. The Plan forbids amending Plan language so as to adversely affect benefit eligibility within one year of a change in control. It also requires that any amendment be approved by UNUMProvident's Senior Vice President of Human Resources.

In an abuse of discretion review, the question before the Court is whether Defendant Cornett's interpretation follows reasonably from the language of the Plan. *See Terry*, 145 F.3d at 40; *Canis v. Coca-Cola Enters., Inc.*, 49 F.Supp.2d 73, 82 (D.R.I.1999). "It is irrelevant whether this Court agrees with the [interpretation] or whether the employee offers a competing reasonable interpretation. To uphold the administrator, this Court need only find that the [interpretation] was reasonable." *Canis*, 49 F.Supp.2d at 82.

Read without the benefit of Defendant Cornett's interpretation, the Plan's Change of Control provision defines "job elimination," in pertinent part, as *either* (1) a "significant adverse reduction or alteration in the nature or status (other than title)" of an officer's job, *or* (2) "the lack of any re-employment opportunity" with the company. Although these two phrases are written in the disjunctive, taking the second in isolation results in a nonsensical definition. A "lack of re-employment opportunity," by itself, could not possibly amount to "job elimination." Otherwise, an officer would be entitled to collect benefits without a diminution in the responsibilities of his current job, so long as he had no re-employment prospects with the company should his employment be terminated.

The Administrative Rule seeks to avoid this absurdity by combining the two definitions of "job elimination." For benefits to be paid, any "significant adverse reduction or alteration in the nature or status (other than title)" of the officer's work responsibilities must be *accompanied by* a "lack of re-employment opportunity." The company does not consider a reduction or alteration in the responsibilities of an officer's job significant if the company offers the officer another "comparable position." Thus, an officer remains ineligible for benefits after a merger unless the company fails to offer her or place her in a position in the same geographic area, at roughly the same salary, utilizing the same job skills and abilities.

Plaintiff protests that this interpretation effectively amends the Plan, because the plain language of the Change of Control provision suggests that the two definitions of "job elimination" should be read disjunctively. Plaintiff's preferred construction would permit an officer to quit her job and begin collecting benefits once a "significant adverse reduction or alteration" occurs, regardless of her "re-employment opportunities." While it is true that a disjunctive reading is suggested by the language of the Plan, the Court will not enforce Plaintiff's preferred reading so long as Defendant Cornett's interpretation is reasonable. *See Terry,* 145 F.3d at 40; *Canis,* 49 F.Supp.2d at 82.

The Court finds that it is. The Plan Administrator acted within his discretion in interpreting the Plan so as to avoid a nonsensical reading of "lack of re-employment opportunity." His reading is consistent with the purpose of the plan to provide benefits to "officers who are involuntarily terminated," and is fairly suggested by the Plan language, if not explicitly stated. Thus, a "job elimination" under the Plan requires that an officer *not* be offered a comparable position with the company after a change of control.

## D. Cornett's Benefits Determination

 Having determined that the Administrator's interpretation of the Plan is reasonable, the Court reviews his application of the facts of this case to the Plan's language for abuse of discretion. *Firestone,* 489 U.S. at 115, 109 S.Ct. 948. Plaintiff argues that the Administrator erred in finding that the diminution in her work responsibilities, and the increase in her travel and work hour requirements were not "significant adverse reduction[s] or alteration[s] in the nature or status" of her employment. Her argument is hand-cuffed, however, by the Administrator's reasonable interpretation of the plan. A "significant adverse reduction or alteration," according to the Administrator, represents (1) a "loss of the officer's position" without the offer of a "comparable position;" (2) a demotion from managerial to non-managerial work; or (3) a greater than ten percent reduction in wage.[4]

The Plan Administrator determined that Plaintiff's job changes did not fall into any of these categories. The Court does not find this decision arbitrary and capricious. The job did not entail a change of location for Plaintiff, and her wage did not decline. Although Plaintiff contends that her strategic and fiscal decision-making responsibilities dwindled, the administrative record lacks detail as to the severity of this decline. Absent such information, the Court will not find that the Administrator abused his discretion by deciding that the reduction was not severe enough to eliminate Plaintiff's job. As for the remainder of Plaintiff's complaints—that her hours and travel increased, and that she received less reimbursement for calls home—the Court will not disturb the Plan Administrator's judgment that such increases are in line with what UNUMProvident demands of all officers, absent a contrary showing from Plaintiff. Because she has made none, the Court finds the Administrator's determination is within the bounds of his discretion.

## V. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion for Additional Discovery and GRANTS Defendants' Motion for Summary Judgment.

SO ORDERED.

---

4. The latter two definitions are redundant with the first. A "comparable position" is defined as one utilizing the same skills and abilities, and paying a similar wage.